UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 4:18-10097-CIV-MARTINEZ/AOR

RICARDO SANCHEZ, as Personal
Representative of the ESTATE OF TERESA
SANCHEZ QUETGLAS, *et al.*,

Plaintiffs,

v.

DISCOUNT ROCK & SAND, INC., a Florida
corporation, and CARLOS MANSO BLANCO,
individually,

Defendants.
_____/

## ORDER

THIS CAUSE came before the Court upon Plaintiffs' Ricardo Sanchez, as Personal Representative of the Estate of Teresa Sanchez Quetglas; Elia Bonfante, as Personal Representative of the Estate of Ana Gaitan Diaz; Francisco Cortes, as Personal Representative of the Estate of Margarita Cortes-Pardo; and Julio Lopez-Bermejo Rossello's, as Personal Representative of the Estate of Maria Lopez-Bermejo Rossello (together, "Plaintiffs") Motion for Sanctions Against Defendants Discount Rock & Sand, Inc. ("Discount Rock"), and Carlos Manso Blanco ("Blanco") for Bad Faith Spoliation of Cellphone Evidence (hereafter, "Motion for Sanctions") [D.E. 64]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 69]. The undersigned held an evidentiary hearing on this matter on September 26, 2019 (hereafter, "Evidentiary Hearing") [D.E. 108]. For the reasons stated below, the undersigned DENIES Plaintiffs' Motion for Sanctions.

## **PROCEDURAL BACKGROUND**

Plaintiffs bring this action against Defendants as a result of a vehicle accident that occurred in the Florida Keys on March 5, 2018. See Compl. [D.E. 1]. The accident occurred while Defendant Blanco was driving and in control of a 2018 Isuzu truck that was owned by Defendant Discount Rock. Id. The truck collided with the 2017 Nissan Rogue motor vehicle in which Plaintiffs' decedents, Teresa Sanchez Quetglas, Ana Gaitan Diaz, Margarita Cortes-Pardo, and Maria Lopez-Bermejo Rosello ("Decedents"), were riding, resulting in their deaths. Id. at 4. Plaintiffs assert negligence claims against Discount Sand and Blanco that are predicated, *inter alia*, on Discount Sand's knowledge that Blanco was "unfit to operate a commercial vehicle and had a driving record that placed Defendant on actual or constructive notice of Blanco's dangerous propensities to violate traffic/safety laws and rules while driving" and that Blanco "negligently operated and/or maintained the 2018 Isuzu truck, causing a crash with the 2017 Nissan Rogue in which Plaintiffs' decedents were riding." Id. at 5.

In their Motion for Sanctions, Plaintiffs state that Blanco was in possession of a cellphone at the time of the accident; that Plaintiffs timely provided notice to Defendants to preserve said cellphone in March 2018; and that, ultimately, the cellphone was turned over to Plaintiffs after December 14, 2018 with evidence that it had been altered due to continued use by Blanco, resulting in the absence of certain information from the date and time of the accident. See Motion for Sanctions [D.E. 64 at 1-5]. As sanctions for their spoliation claim, Plaintiffs request that an adverse inference instruction be given to the jury and that all of Defendants' defenses be stricken. Defendants argue that there was no duty to preserve the phone without using it, that Plaintiffs failed to show that any alleged missing evidence

2

existed, and that any such evidence, if it existed, would not be crucial to proving Plaintiffs' prima facie case. Discount Rock further argues that it acted in good faith and did not engage in any behavior that equated to the destruction of evidence that was in its possession or control. See Discount Rock's Response to Motion for Sanctions [D.E. 80 at 1-2]. Blanco's position is that he was not aware that he was prohibited from using his cellphone after receipt of the preservation notices; therefore, there is no evidence of bad faith on his part. See Blanco's Response to Motion for Sanctions [D.E. 76].

The following witnesses testified at the Evidentiary Hearing: Bruce Trybus, Esq. ("Attorney Trybus"), Hoss Hernandez, Esq. ("Attorney Hernandez"), Blanco, and Andrew Reisman ("Mr. Reisman"). See Exhibit and Witness List [D.E. 129]. The following exhibits were admitted into evidence: Plaintiffs' Exhibits 1, 1-A, 1-B, and 2 through 22; Defendant Blanco's Exhibits 3 through 5, and 13. Id.

## FACTS

*Attorney Trybus' Testimony*

1. Attorney Trybus was counsel for both Discount Rock and Blanco in the past. That representation terminated approximately one year prior to the Evidentiary Hearing. At the time of the representation, Attorney Trybus' fees were paid for by Discount Rock's insurance company, National Indemnity.

2. Attorney Trybus never hired a testifying expert for this case.

3. Attorney Trybus never had possession of Blanco's phone.

4. On March 13, 2018, Plaintiffs' counsel sent Defendant Blanco a letter via certified and regular mail. The letter was also attached to Plaintiffs' counsel's original correspondence to Attorney Trybus. The letter states:

> Accordingly, we hereby request that you preserve the following for all electronic devices in your possession including but not limited to a cell phone(s), smartphone(s), tablet, iPad, laptop, GPS during the time period listed above as follows: 1. Maintain and preserve the actual electronic device(s) that you owned or possessed at the time of the collision; 2. Maintain your cell phone and/or data usage records for the month of the collision; 3. Preserve all calls, call logs, voicemails, text messages, emails, instant messages, social media messages, social media posts, internet searches, GPS data, and any other electronic communication or data. Please do not alter, delete, destroy or discharge any of your electronic devices and/or the above-requested data until we have had an opportunity to have them inspected by an expert.
>
> ***
>
> Finally, please contact us for permission to conduct an inspection of the above-referenced evidence.

See Pl's Ex. 12. On the same date, a letter with the same content was also sent to Discount Rock. See Pl's Ex. 13. Attorney Trybus thinks this letter was also attached to a letter from Plaintiffs' counsel to himself.

5. On March 22, 2018, Plaintiffs' counsel sent a letter to Attorney Trybus renewing Plaintiffs' request for preservation of Blanco's cellphone, along with any other electronic devices or cameras, and asking for cellphone information by the end of business the next day. The letter also states, "Additionally, please make sure to preserve all text messages, emails, or any other message data." See Pl's Ex. 14.

6. On October 22, 2018, Plaintiffs served their First Request for Production to Defendants, which included a request for the "cellphone(s) Carlos Manso Blanco had in his possession at the time of the subject crash." See Pl's Ex. 15. Blanco's cellphone was not produced to Plaintiffs at that time.

4

7. On October 23, 2018, Attorney Trybus sent an e-mail to Plaintiffs' attorney, copied to multiple people. It is part of a chain of e-mails. In the preceding e-mail, from Plaintiffs' attorney to Attorney Trybus, copied to multiple people, Plaintiffs' attorney wrote:

> First, we have not received the mandatory discovery/initial disclosures required by the Rules from either of the defendants. We anticipated receiving said disclosures (including the cell phone evidence we have requested repeatedly) in advance of the depositions we have set for Saturday. We have reached out to you several times regarding the issue of said initial disclosures.

See Pl's Ex. 16. Blanco's cellphone was not produced to Plaintiffs in response to this request.

8. On December 14, 2018, Plaintiffs' attorney sent an e-mail to Attorney Trybus, copied to several others. See Pl's Ex. 19. At the time of that e-mail, Attorney Trybus' associate, Ms. Lewis, was preparing the initial discovery disclosures with Attorney Trybus' assistance. At the time of the December 14, 2018 e-mail, there was a delay with the discovery disclosures because Ms. Lewis was in the hospital. The e-mail read, in part:

> I waited an additional week, since I was told that you were in trial and that Ms. Lewis was in the hospital. But since we have still received no discovery from your client, no phone or phone records, and have still not been provided a new deposition date for him, we have prepared the attached proposed motion to compel.

Id.

9. By the time of Blanco's initial deposition, Attorney Trybus was no longer representing Blanco.

10. There were several attachments to the March 13, 2018 preservation letter from Plaintiffs' counsel Silva & Silva to Attorney Trybus, including: a March 12, 2018 certified letter to Blanco requesting preservation of his vehicle; a March 13, 2018 certified letter to Blanco requesting preservation of his cellphone; a March 13, 2018 certified letter to Blanco

5

asking for insurance information and reiterating the request for preservation of his vehicle; a March 12, 2018 certified letter to Discount Rock requesting preservation of the vehicle; a March 13, 2018 letter to Discount Rock requesting preservation of Blanco's cellphone; and a March 13, 2018 letter to Discount Rock requesting insurance information and preservation of the vehicle. See Def. Blanco Ex. 13.

11. The preservation letters for the vehicle instructed that it should not be operated. The preservation letters for the cellphone did not have a similar request that it should not be used.

12. The first time Attorney Trybus was asked to produce Blanco's cellphone was in Plaintiffs' October 2018 Request to Produce.

13. As noted above, the March 13, 2018 preservation letter for Blanco's cellphone states:

> Finally, please contact us for permission to conduct an inspection of the above-referenced evidence.

See Pl's Ex. 12. Attorney Trybus did not interpret this to be a request to produce the phone.

14. With regard to the March 13, 2018 letter and attachments, Attorney Trybus knew that Blanco kept the cellphone. Attorney Trybus had no idea what happened to the data on the cellphone, or if electronic data on the cellphone was preserved. He was not in possession of the cellphone, nor did he ever see the cellphone.

15. Attorney Trybus has been practicing law in Florida since 1992 and is an AV-rated attorney in Florida.

16. The undersigned finds that Attorney Trybus was credible and accepts his testimony.

*Attorney Hernandez's Testimony*

17. At the time of the Evidentiary Hearing, Attorney Hernandez was personal counsel for Blanco.

18. The only time Attorney Hernandez had possession of Blanco's cellphone was during the transfer of the cellphone from Blanco to Plaintiffs' expert at a court hearing that took place earlier in 2019.

19. Attorney Hernandez was not aware of any deletions or alterations to Blanco's cellphone before it was turned over to Plaintiffs' expert.

20. Attorney Hernandez was aware that Plaintiffs had requested that Blanco's cellphone not be altered and that it be produced for inspection a couple weeks after the accident.

21. Attorney Hernandez recalled that, if he was not going to advise Blanco to plead the Fifth Amendment, one of the conditions for Blanco to give a deposition was that the deposition remain under seal and not be turned over the State Attorney's Office.

22. Attorney Hernandez had a concern about Blanco's cellphone being obtained by the State Attorney's Office in Monroe County. Even though there had not been a criminal investigation and only an accident investigation, Attorney Hernandez still had that concern and he had to protect his client.

23. Attorney Hernandez was not copied on any of the e-mails Plaintiffs' counsel sent to Discount Rock's attorney, Andrea Cox ("Attorney Cox"), and was not aware of any of the information or requests therein.

24. The first time Blanco's cellphone was produced in this case was in response to the Court's February 27, 2019 Order. See Pl's Ex. 20.

25. The undersigned finds that Attorney Hernandez was credible and accepts his testimony.

*Blanco's Testimony*

26. Blanco recognized Plaintiff's Exhibit 12 to be a letter addressed to himself at an address where he was living on March 5, 2018, and which was signed as received by his grandmother. See Pl's Ex. 12. His grandmother made him see the letter. He had someone translate and explain it to him. He was told to preserve his cellphone.

27. Blanco preserved the phone and waited.

28. Blanco does not remember talking to his employer about the cellphone or his employer asking to see the cellphone.

29. At the time Blanco received the letter, he continued to use his cellphone. He used his phone continuously from the date of the accident until the day he turned it over to the Plaintiffs' expert, approximately one year later.

30. The cellphone Blanco had on the day of the accident was run over by a car in an accident that occurred about one or two months before the Evidentiary Hearing.

31. Blanco did not remember if he had Facebook, Whatsapp, or Instagram on his phone at the time of the accident, but it was possible.

32. Blanco did not remember using his cellphone right before or at the time of the accident.

33. At the time of the accident, Blanco's cellphone was next to him.

34. At Blanco's deposition, Blanco testified that, at the time of the accident, he had Facebook Messenger, Instagram, Imo and Whatsapp on his cellphone. See Blanco Deposition, Pl's Ex. 4 [D.E. 109-7 at 33].

35. Blanco never believed that he had to stop using his cellphone after the accident.

36. Blanco did not deliberately delete anything from his cellphone following the accident.

8

37. Blanco did not believe that his continued use of his cellphone would result in deleting anything.

38. Although Blanco's attitude on the witness stand was defensive, the undersigned accepts his representations regarding his understanding of his preservation duties.

*Mr. Reisman's Expert Testimony*

39. Mr. Reisman is the CEO of ELIJAH, a digital forensics, e-discovery and cybersecurity company. Digital forensics is the science of preserving and analyzing electronically-stored information. Mr. Reisman has been involved in the field of digital forensics since 2003 and has over 20,000 hours of work experience performing digital forensic analyses.

40. At the Evidentiary Hearing, Mr. Reisman was accepted as an expert witness in digital forensics.

41. Mr. Reisman was appointed by the Court as a neutral party to create a forensic image of Blanco's cellphone. See Court Order, Pl's Ex. 20. Thereafter, counsel for the parties agreed that Mr. Reisman and his company would examine the contents of Blanco's cellphone for a specified period of time. See Pl's Ex. 22.

42. Blanco's cellphone was a Samsung Galaxy, model J7.

43. Three of the main best practices to preserve a cellphone would be to: (1) set it aside, turn it off, or get a new SIM card; (2) back up the data; or (3) forensically image the phone.

44. Mr. Reisman's company created a forensic image of Blanco's cellphone on March 4, 2019.

45. A phone is a dynamic device that contains electronically-stored information, also known as memory. A smartphone, such as Blanco's cellphone, when constantly or near

9

constantly in use, will have data written over through the normal use of the cellphone. The sooner one can preserve a phone, the closer it will be to a time at which one can see what happened when the event at issue occurred.

46. In an example of ten days' time passing, there would be a negligible impact from normal use. As time goes on, more data potentially can be overwritten.

47. Blanco's cellphone from the date of the incident had memory and the ability to store data.

48. If Mr. Reisman had been provided Blanco's cellphone on March 5, 2018, Mr. Reisman would have been able to forensically extract data, including texts and phone calls, from Whatsapp, Facebook Messenger, and Instagram. Mr. Reisman did not know if he could forensically extract data from Imo because he lacked experience with that application.

49. Phone records from carriers such as Verizon do not show evidence of Whatsapp, Facebook Messenger, or Instagram usage. Verizon records can show data usage generally, but not specifically as to a particular application.

50. If a cellphone is turned on, but it is not being used or looked at, the cellphone would still show internet connectivity. If a cellphone is turned off, it will not show internet connectivity.

51. There are allocated files or data on a phone such that, when new data comes in, it cannot overwrite data that is preserved because it is active. There is also unallocated space where new data can be written. New data is stored, and therefore overwrites, other areas of a phone's memory.

52. The Verizon record of the data usage of Blanco's phone on March 5, 2018 shows that there was a little bit of data usage after the accident. There was some percentage of around 70 megabytes, and then about 5 or 6 megabytes, which is fairly negligible.

53. If one assumes the data is not turned off on a cellphone, and the device were to remain in use, more data would be written to the device as it is used. If the device were used for over a year, there is a high probability that most, if not all, of the deleted data would have been overwritten, given the span of time and relatively even usage over the course of a year.

54. For Blanco's cellphone, Mr. Reisman and/or his company created a forensic image of the cellphone on March 4, 2019 for a specific window of time that had been agreed upon by the parties, from noon to 4:00 pm on March 5, 2018, the date of the accident.

55. Mr. Reisman interpreted from the Verizon phone records of Blanco's cellphone that Blanco's cell phone was powered on on March 5, 2018 and was connected to Verizon's data network as shown by two data sessions that started on 12:39 pm that day, with one ending at 2:42 pm and the other ending at 6:38 pm. See Pl's Ex. 1A. Therefore, there was data connectivity at 1:56 pm, the time of the accident.

56. The Verizon phone records show that approximately ten to fifteen phone calls were placed or received on Blanco's cellphone on March 5, 2018 between noon to 4:00 pm. See Pl's Ex. 1B.

57. Mr. Reisman's forensic extraction report, performed with Cellebrite, showed one SMS text that was received by Blanco's cellphone on March 5, 2018. See Pl's Ex. 2. The message was received at 2:16pm Greenwich time, which would have been 9:16am Eastern time. Mr. Reisman was unsure which time zone counsel had intended the four-hour block to be in.

58. Mr. Reisman's forensic extraction report did not show any other evidence of text messages or of any phone calls, even though the Verizon records indicated that phone calls had been made during that time.

59. This absence of phone calls on the forensic extraction report was not surprising because calls are typically logged in a manner that takes into account the cellphone's finite storage. If the cellphone had been in active use for a year, it would be typical to find calls on a carrier record that would not be on the cellphone device.

60. For data that is extractable from social media types of applications, the ability to track call logs would be limited by whether the person has deleted that data and if it had been overwritten.

61. The phone memory as it existed on the day of the accident is not available.

62. There was no physical damage to Blanco's cellphone at the time Mr. Reisman examined it.

63. With respect to call logs, Mr. Reisman would not be able to ascertain whether old calls were overwritten due to the passage of time and use of the device, or whether they were purposefully deleted.

64. How much data gets overwritten on a cellphone is a function of the frequency, nature and extent of the cellphone's usage over a period of time, and what data gets overwritten is "dumb luck."

65. Looking solely at the extraction report, Mr. Reisman would only be able to say that the one item he found was there. He would not be able to say whether data he could not find was there or was not there.

66. The undersigned accepts Mr. Reisman's testimony as an expert witness.

*Deposition Testimony of Daniel Pinkerton ("Mr. Pinkerton")*

In a videotaped deposition of Mr. Pinkerton taken on May 13, 2019, Mr. Pinkerton stated:

67. Prior to the impact, "I was looking right at the driver [Blanco] because I could see him. We weren't but maybe three or four car lengths away at this point, when I realized he's – I did not think he was going to have time to stop and so all of this is happening very quickly. And I saw [Blanco] looking down, and his arms were in this position. It's like fixed in my brain. And all of a sudden I saw him look up and this startled look on his face." See Pl's Ex. 6 [D.E. 109-8 at 8].

68. "[Blanco] was looking down at his lap when I first saw – when I saw him at that point." Id. at 10.

69. "I did not see what [Blanco] had in his lap . . . He was not looking at the road. He was looking down." Id. at 11.

70. In response to "Could you tell me where his hands were?," Mr. Pinkerton responded, "When I saw [Blanco], his hands were down here. That's why – I saw him looking down like this towards his lap and his – you could – not here. Here. They were down. They were down in his lap. Down in the lower area. Now, I can't say if they were in his lap or on the steering wheel down there, but he was looking down here." Id. at 13.

71. The undersigned accepts the testimony of Mr. Pinkerton at face value.

## APPLICABLE LAW

"Spoliation is defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument." Kirsch v. Carnival Corp., No. 14-CV-24920, 2016 WL 6916745, at *2 (S.D. Fla. Jan. 19, 2016) (quoting Green Leaf Nursery v. E.I. DuPont De

Nemours & Co., 341 F.3d 1292, 1308 (11th Cir. 2003)). For spoliation to be established, the moving party must show "(1) that the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its prima facie case or defense." Managed Care Sols., Inc. v. Essent Healthcare, Inc., 736 F. Supp. 2d 1317, 1323-24 (S.D. Fla. 2010). The duty to preserve "arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable." Point Blank Sols., Inc. v. Toyobo America, Inc., No. 09-61166-CIV, 2011 WL 1456029, at *24 (S.D. Fla. Apr. 5, 2011).

Sanctions may only be imposed on a party for spoliation of evidence, "when the absence of that evidence is predicated on bad faith." Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997). "[I]n the Eleventh Circuit, a court may impose spoliation sanctions for the failure to preserve evidence only when the absence of that evidence is predicated on bad faith, such as where a party purposely loses or destroys relevant evidence." Kirsch, 2016 WL 6916745, at *2 (citations omitted). Bad faith can be established through circumstantial evidence if

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

In re Complaint of Boston Boat III, L.L.C., 310 F.R.D. 510, 520 (S.D. Fla. 2015).

"As sanctions for spoliation, courts may impose the following: (1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." Flury v. Daimler Chrysler Corp., 427 F.3d 939, 945 (11th Cir. 2005).

## DISCUSSION

As noted above, a spoliation claim requires proof "(1) that the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its prima facie case or defense." Managed Care Sols., 736 F.Supp.2d at 1323-24.

### 1. *Whether missing evidence existed at one time*

Mr. Reisman testified that Blanco's cellphone was in an active data session at the time of the accident. He also testified that the Verizon phone records contained evidence of phone calls and text messages that existed during the four-hour period of time surrounding the accident, but that the cellphone's memory data of these calls and messages had been overwritten by the time of the forensic imaging on March 4, 2019. He further testified that Blanco's cellphone's memory data had since been overwritten due to the passage of time, but Mr. Reisman could not say whether data missing from the forensic extraction report had ever been, or not been, on Blanco's cellphone. Although there is evidence that the forensically extracted image of the memory of Blanco's cellphone was not the same as it was on March 5, 2018, Plaintiff has not shown that any alleged missing data would have established that Blanco was using his cellphone at the moment of the accident. For example, *if there was* data showing that an application such as Facebook, Whatsapp, or Instagram was open at the time of the accident, Plaintiffs have not shown how such data could prove active use of the application by Blanco. Therefore, Plaintiffs have failed to prove that evidence once existed that would prove that Blanco was actively using his cellphone at the time of the accident.

15

### 2. *Whether Defendants had a duty to preserve the evidence*

Plaintiffs timely sent a letter of preservation to Blanco and Attorney Trybus shortly after the accident, and they repeated these requests over the course of a year. Thus, there was a duty to preserve the evidence. However, the preservation letter did not specifically demand that the cellphone not be used pending imaging. While there was a delay in production of the cellphone, it was eventually produced and imaged.

### 3. *Whether the evidence was crucial to Plaintiffs' prima facie case*

Plaintiffs argue that, due to spoliation of the cellphone evidence, they are not able to establish that Blanco caused the accident because he was distracted by his cellphone use. However, other evidence is available for this contention, such as the deposition testimony of Mr. Pinkerton. Moreover, Plaintiffs are not limited from going forward on their negligence theories in the absence of the alleged missing cellphone evidence. Therefore, Plaintiffs have not proven that the alleged evidence, if it did exist, would be crucial to their prima facie case.[1]

### 4. *Whether there was bad faith*

Finally, even if Plaintiffs had established these spoliation elements, they must further establish bad faith. Discount Rock did not have possession or control over the cellphone and there is no evidence in the record of bad faith on its part. Blanco testified that he believed he had "preserved" the phone by keeping it in his possession and that he did not know he was prohibited from using the cellphone. He further testified that he did not deliberately delete anything from the cellphone. Mr. Reisman testified that a cellphone, such as Blanco's cellphone, would have data overwritten over the course of time with normal use of the

---

[1] Plaintiffs further contend that the alleged missing evidence would go "directly to punitive damages;" however, that is not their main case.

cellphone, and more data could potentially be overwritten as time increased. He further testified, however, that he was unable to ascertain whether it was the passage of time, or purposeful actions, which led to Blanco's cellphone memory changing from the way it was on March 5, 2018 to the date of the forensic exam on March 4, 2019.

Thus, there was no evidence of a purposeful attempt or affirmative act made to delete information from the cellphone. Bashir, 119 F.3d at 931 ("an adverse inference from [missing evidence] is permissible only if the circumstances surrounding its absence indicate bad faith (e.g. tampering)"); Kirsch, 2016 WL 6916745, at *2 (bad faith defined as "where a party purposely loses or destroys relevant evidence"). Because bad faith has not been proven on the part of either Discount Rock or Blanco, spoliation sanctions are not appropriate. Bashir, 119 F.3d at 931.

## CONCLUSION

Based on the foregoing considerations, it is

ORDERED AND ADJUDGED that Plaintiffs' Motion for Sanctions [D.E. 64] is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida this 27th day of November, 2019.

*[signature]*
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Jose E. Martinez
     Counsel of Record